MARKOFF v. DETROIT UNITED RAILWAY.

1. PLEADING—EVIDENCE—PERSONAL INJURIES—ASSAULT.
   To exclude evidence of injury to plaintiff's heart was error, in a personal injury action wherein plaintiff's declaration alleged that he was hurt, injured, bruised, wounded, cut and lacerated by defendant's conductor, "in and about his head, neck, shoulder, sides and arms, and then and there received permanent injuries to his head and base of his brain, from which he has suffered through faintness, dizzy spells, nausea and hypochondria," etc., and further counted on severe and permanent internal injuries.

2. SAME—EVIDENCE.
   Evidence on the part of plaintiff that he had been in the habit

of boarding the car in the manner adopted by him at the time of the injury, and had never been warned by the conductor to wait until the passengers alighted, that the conductor ordered him off and assaulted him with great violence, being contradicted by defendant's witnesses, presented an issue of fact for the jury.

Error to Wayne; Mandell, J. Submitted January 18, 1912. (Docket No. 53.) Decided March 12, 1912.

Case by John Markoff against the Detroit United Railway for personal injuries. Judgment for defendant. Plaintiff brings error. Reversed.

*William Look*, for appellant.

*Corliss, Leete & Joslyn* and *Benjamin S. Pagel*, for appellee.

STONE, J. The plaintiff brought suit to recover damages to his person and property by reason of an alleged unprovoked, vicious, and unjustifiable assault committed upon him while boarding a standing car of defendant, by one of its conductors, at the trolley station of the defendant on Fort street west and Woodward avenue, in the city of Detroit, on January 12, 1910. In his declaration, after alleging the circumstances of the assault, he set forth his injuries in the following language:

" And the plaintiff further avers that by reason of the negligent, careless, reckless, improper, and vicious conduct of the said defendant, its conductors, agents, servants, employés in charge of the said car as aforesaid, said plaintiff then and there became and was greatly hurt, bruised, injured, wounded, cut, and lacerated in and about his head, neck, shoulder, sides, and arms, and then and there received severe and permanent injuries by reason of the premises to his head and base of his brain from which he has suffered through faintness, dizzy spells, nausea, and hypochondria, which has caused him to lose sleep, and also by reason of the premises said plaintiff herein has suffered great and excruciating pains in and about his head and base of his brain for a long space of

time, to wit, from thence hitherto, and is informed by his physician that he will continue to suffer from such headaches, faintness, dizzy spells, and nausea for a long time to come, and further, that by reason of the premises aforesaid said plaintiff suffered a severe and permanent injury to his face and neck, his said face and neck being then and there cut, bruised, lacerated, and injured, causing him great pain for a long space of time, to wit, from thence hitherto, and said plaintiff was also by reason of the premises injured internally as well as externally, and further, that by reason of the premises aforesaid the said plaintiff suffered a severe and permanent injury to his neck, shoulders, sides, and arms, the ligaments tendons, sinews, muscles, and cords of his neck, shoulders, arms, and sides, being then and there twisted, torn, wrenched, sprained, and greatly and permanently injured, causing said plaintiff most excruciating pain and agony of both mind and body for a long space of time, to wit, from thence hitherto, and plaintiff will continue in the future to suffer from said injuries as aforesaid for a long space of time; and plaintiff also by reason thereof had his watch torn from his coat and lost the same and has not recovered his said watch and chain up to this time, and the said plaintiff by reason of the premises and the many injuries so received as aforesaid then and there and thereupon became and was sick, sore, lame, and disordered, and so remained and so continued for a long space of time, to wit, from thence hitherto, and from which injuries he will continue to suffer during the remainder of his natural life, as his said injuries are permanent and incurable; and because of the said unwarranted and negligent and improper assault as aforesaid, plaintiff herein has suffered great mental anguish and pain, humiliation, and distress by reason thereof, and from which injuries he will be deprived of social enjoyment and companionship in the future, and will suffer great mental as well as great bodily pain, anguish, weakness and distress."

On the trial the plaintiff gave evidence tending to show that he was in the employ of the American Brewery Company, located at Delray; that for many years it was the custom of the plaintiff to board a car of the defendant on what is known as the Fort line at the trolley station located on Fort street west, and the city hall, ride around the loop

on Cadillac square, and thence proceed west on Fort street to his destination at Delray; that on the morning in question he left his home, took a Third avenue car, and obtained a transfer to the Fort line; that when he arrived at Woodward avenue and Fort street west, he saw a Fort car standing there, and he hurried over and got on the rear platform, as was his custom; that the conductor immediately ordered him off, and at the same time struck him several violent blows upon the chest and face, and spat in his face, and a scuffle ensued in which the plaintiff was injured. The plaintiff distinctly testified that he had no previous notice or warning, either that morning or before, from the conductor, not to board the car at that place, and that no passengers were getting off at the rear end of the car at the time he boarded it, and the plaintiff was corroborated by other witnesses.

On the part of the defendant there was testimony tending to show that the conductor had on two or three previous mornings warned the plaintiff to keep off the car until the passengers had alighted; that it was the custom of 20 or 30 men to board this car at the place indicated, every morning before the passengers had alighted; that plaintiff seemed to be the first one to get on the car; that a number of passengers were getting off the rear end of the car at the time he detained the plaintiff. It was also testified to that the conductor made no assault upon the plaintiff, but simply took hold of him to detain him until the passengers alighted.

Upon the trial the plaintiff testified as follows:

"I attended the doctor a couple of times—Dr. Berger. I suffered pain. It hurt me where I was struck, right in the heart; that was where I was struck. * * * My heart never bothered me before the accident, and I did not have headaches before that."

The defendant's attorney moved that the testimony in regard to the plaintiff's heart trouble be stricken out, as not covered by the declaration. This motion was granted, whereupon plaintiff's attorney excepted.

The case was submitted to the jury under the charge of
the court.   In his charge the trial judge, among other
things, said:

"The conditions which obtained when the trouble which
is the subject of this lawsuit occurred are not in dispute.
Briefly stated, they are these:  A street car that the plain-
tiff sought to board was bound east on Fort street, and
was going, shortly after, west, and was going around
what is known as the Cadillac square loop in this city.
* * *  On that car there were certain passengers, and
those passengers had to alight at Woodward avenue, and
after the passengers alighted the car was then turned
around, after going a couple of blocks it would turn around
and go west, and it appears from the evidence that is un-
disputed that certain passengers that were in the habit of
taking that car, and others, early in the morning, were in
the habit of getting on the car before it started westward,
and it appears from the undisputed testimony in this case
by doing that, inconvenience was suffered by those who
were on the car when it was bound east, and because of
that the conductor sought to keep those who desired to go
west on the car off from the car, until other passengers
had alighted, and until the car had started toward the
west.   It appears from the undisputed testimony in this
case that a statement of the desire and wish of the con-
ductor had been imparted, on previous occasions, to this
plaintiff, and it appears further the conductor was in
charge of the car."

The jury returned a verdict in favor of the defendant of
no cause of action.   There was a motion for a new trial,
and among the errors complained of by the plaintiff was,
because the court erred in excluding plaintiff's testimony
respecting heart trouble.   The motion for a new trial
was denied, the reasons for such denial were excepted to,
and the plaintiff has brought the case here upon writ of
error.   Among other things, he alleges error in the rul-
ing striking out the testimony of the plaintiff relating to
his heart trouble.   Also, to that part of the charge above
quoted which states that the conditions which obtained
when the trouble arose were undisputed, and that it ap-
peared from the undisputed testimony that a statement of

the desire and wish of the conductor had been imparted on previous occasions to the plaintiff, relative to waiting until the passengers on the car had alighted before boarding the car, and that passengers were alighting at the time.

1. Did the trial court err in its ruling striking out the testimony of the plaintiff relating to heart trouble, for the reason that it was not covered by the declaration?

In view of the repeated decisions of this court, we are of opinion that the ruling was erroneous. See the following cases: *Montgomery* v. *Railway Co.*, 103 Mich. 46 (61 N. W. 543, 29 L. R. A. 287); *Leslie* v. *Traction Co.*, 134 Mich. 518 (96 N. W. 580); *Comstock* v. *Township of Georgetown*, 137 Mich. 541 (100 N. W. 788); *Renders* v. *Railroad Co.*, 144 Mich. 387–391 (108 N. W. 368); *Groat* v. *Railway*, 153 Mich. 165–167 (116 N. W. 1081).

2. Was there error in that part of the charge above indicated?

We are of opinion that there was a sharp conflict in the evidence upon the questions above stated, and that the court erred in instructing the jury that the evidence was undisputed. We think that this part of the charge was prejudicial to the plaintiff. *Hengesbach* v. *Railway*, 147 Mich. 681 (111 N. W. 345); *Plefka* v. *Railway*, 155 Mich. 53 (118 N. W. 731).

The other errors complained of relate to the refusal to grant a new trial on the ground of newly discovered evidence, and the questions are not likely to arise upon another trial.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial granted.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.